**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| OTIS ALTA SANFORD, | :: | HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| WARDEN MR. MEDLIN, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:11-CV-4147-TWT-RGV |

## ORDER FOR SERVICE OF ORDER AND
## REPORT AND RECOMMENDATION

Attached is the Order and Final Report and Recommendation of the United

States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this

Court's Local Rule 72. Let the same be filed and a copy, with a copy of this order, be

served upon counsel for the parties, or if a party is not represented, then directly upon

said party.

Each party may file written objections, if any, to the report and recommendation

within fourteen (14) days of receipt of this order. 28 U.S.C. § 636(b)(1). Should

objections be filed, they shall specify with particularity the alleged error(s) made

(including reference by page number to the transcript if applicable) and shall be served

upon the opposing party. The party filing objections will be responsible for obtaining

and filing the transcript of any evidentiary hearing for review by the district court. If

no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED** this 23rd day of April, 2012.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| OTIS ALTA SANFORD, | :: | HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| WARDEN MR. MEDLIN, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:11-CV-4147-TWT-RGV |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Petitioner, an inmate at the Wheeler Correctional Facility in Alamo, Georgia, has filed this 28 U.S.C. § 2254 petition to challenge his February 28, 2006, convictions in the Superior Court of Fulton County. The matter is now before the Court on the petition, [Doc. 1], respondent's answer-response, [Doc. 6], Commissioner Brian Owens' motion to intervene as a party respondent, [Doc. 7], and motion to file responsive pleadings out of time, [Doc. 8], and petitioner's rebuttal to the response, [Doc. 10]. Because the Wheeler Correctional Facility is a private prison that houses prisoners pursuant to a contract with the Georgia Department of Corrections and Commissioner Owens is the chief officer in charge of Georgia's penal institutions, Commissioner Owens' motion to intervene as a party respondent, [Doc. 7], is

**GRANTED**.[1] For good cause shown, Commissioner Owens' motion to file responsive pleadings out of time, [Doc. 8], is also **GRANTED**. Additionally, for the reasons stated below, the undersigned **RECOMMENDS** that the petition be **DENIED**.

## I. PROCEDURAL HISTORY

A Fulton County jury found petitioner guilty of malice murder, felony murder while in the commission of aggravated assault with a deadly weapon, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Veronica Corbett. Sanford v. State, 695 S.E.2d 579, 582 n.1 (Ga. 2010), cert. denied, 131 S. Ct. 1514 (2011). Petitioner received a total sentence of life plus five years of imprisonment for malice murder and possession of a firearm during the commission of a felony. Id. The aggravated assault with a deadly weapon charge merged for the purpose of sentencing, and the felony

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Court provides, "[i]f a petitioner is currently in custody under a state court judgment, the petition must name as respondent the **state officer** who has custody." 28 U.S.C. foll. § 2254, Rule 2(a) (emphasis added). Thus, the proper respondent is either the warden of the institution where petitioner is incarcerated or "the chief officer in charge of state penal institutions." Id., Advisory Committee's Note. Commissioner Owens is the chief officer in charge of Georgia's penal institutions and, thus, the "state officer" having custody of petitioner. See O.C.G.A. § 42-2-6 (providing that the commissioner of the department of corrections is "the chief administrative officer of the department").

AO 72A
(Rev.8/82)

murder charge stood vacated by operation of law. Id. Kenya Berry and Jennifer Kiser

represented petitioner at trial. [Doc. 9-8 at 1]. The Georgia Supreme Court

summarized the evidence presented at trial as follows:

> On October 1, 2004, Corbett was at the home of Marhna Smith, who was
> the father of one of her children. Corbett lived with [petitioner] from
> time to time. That day [petitioner] went to Smith's home to talk to
> Corbett and to get his cell phone and keys from her. Smith took
> [petitioner's] things outside where [petitioner] could retrieve them.
> Corbett did not want to talk to [petitioner], but he would not leave. After
> waiting for about ten minutes, [petitioner] entered the house and ran past
> Smith, chasing Corbett through the house and down some stairs.
> [Petitioner] then fired two shots at Corbett, striking her. Smith ran from
> the house after he heard the gunshots, and returned when he saw
> [petitioner] leave. Officer Gerjets arrived on the scene and found Corbett
> with a gunshot wound to the chest, but still alive and conscious. She held
> a pillow to her abdomen and was in obvious pain. She told the officer
> that [petitioner] had gone down into the basement and shot her.
> Subsequently, Smith identified [petitioner] from a photographic lineup as
> the man at his house when Corbett was shot. Corbett died at the hospital
> several hours after the shooting as a result of the gunshot wound.
>
> At trial, Officer Gerjets testified that at the crime scene Corbett told him
> that [petitioner] had shot her because they had been in a relationship and
> had broken up and she was "transitioning in a relationship with Smith."
> [Petitioner] did not testify at the trial.

Sanford, 695 S.E.2d at 582-83.

Represented by new counsel, Charles Henry Frier, petitioner filed a direct

appeal, arguing that: (1) the trial court erred in admitting Corbett's out-of-court

statement that petitioner shot her; (2) the trial court erred in overruling trial counsel's objection to Officer Gerjet's hearsay testimony that Corbett said she thought petitioner shot her because they had broken up; (3) the trial court erred in failing to properly ascertain whether petitioner wanted to exercise his right to testify; and (4) trial counsel rendered ineffective assistance by announcing ready for trial when she was not actually ready, overriding petitioner's stated desire to testify, failing to use Corbett's medical records to bolster petitioner's case, and failing to object and/or move for a mistrial when the prosecutor opined during closing argument that petitioner shot Corbett as she was running down the stairs. Appellant's Br. at 13-39, Sanford v. State, No. S10A0148, 2009 WL 7263055 (Ga. Oct. 14, 2009). The Georgia Supreme Court affirmed petitioner's convictions and sentences on May 17, 2010, and the United States Supreme Court denied certiorari on February 22, 2011. Sanford v. State, 695 S.E.2d 579 (Ga. 2010), cert. denied, 131 S. Ct. 1514 (2011).

On November 30, 2011, petitioner filed this § 2254 petition, arguing that: (1) the trial court's admission of the first responding officer's testimony regarding Corbett's statement was an improper expansion of the dying declaration exception to the hearsay rule and violated the Confrontation Clause; (2) the admission of this evidence was also improper because the United States Supreme Court has not ruled on the issue; (3) the

4

admission of this evidence under the res gestae exception to the hearsay rule was improper under Georgia law; and (4) the indictment was invalid, evidence of contributing factors in Corbett's death were not disclosed in discovery, and petitioner was not indicted on lesser included offenses. [Doc. 1 at 5-6]. Respondent argues that the Georgia Supreme Court's rejection of the claims raised in grounds one and two is entitled to deference, that ground three is not cognizable in federal habeas corpus because it does not allege a violation of federal law, and that ground four is procedurally defaulted. [Doc. 6-1 at 4-11]. Petitioner responds that he is entitled to relief as to all four grounds. [Doc. 10].

## II. DISCUSSION

A.    <u>28 U.S.C. § 2254 Standards</u>

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d); Van Poyck v. Fla. Dep't of Corrs., 290 F.3d 1318, 1322 n.4 (11th Cir. 2002) (per curiam) ("[I]n the context of a habeas review of a state court's decision–only Supreme Court precedent can clearly establish the law.").

When applying § 2254(d), the federal court evaluating a habeas petition must first determine the applicable "'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)). Next, the federal habeas court must ascertain whether the state court decision is "contrary to" that clearly established federal law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or whether the state court reached a result different from the Supreme Court on a set of materially indistinguishable facts. Id. at 412-13. In other words, a state court decision is "contrary to" clearly established federal law only when it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. at 405; see also Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (holding that a state court decision is not contrary to federal law simply

because it does not cite Supreme Court authority; the relevant inquiry is whether the reasoning or the result of the state decision contradicts that authority).

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it must then determine whether the state court decision was an "unreasonable application" of clearly established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. <u>Williams</u>, 529 U.S. at 413. "For purposes of § 2254(d)(1), 'an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.'" <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011) (quoting <u>Williams</u>, 529 U.S. at 410) (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly [but r]ather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411. Thus,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

7

<u>Harrington</u>, 131 S. Ct. at 786-87; <u>see</u> <u>also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) ("Where [in a federal habeas corpus petition] the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable."). Additionally, the state court's determinations of factual issues are presumed correct. 28 U.S.C. § 2254(e)(1). A petitioner can overcome this presumption only by presenting "clear and convincing evidence" that the state court's findings of fact were erroneous. <u>Id.</u>

The undersigned has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved. As petitioner has not made the showing required by 28 U.S.C. § 2254(e)(2) to entitle him to an evidentiary hearing, the undersigned finds that no federal evidentiary hearing is warranted, and the case is now ready for disposition.

**B.     Grounds One and Two: Corbett's Statement that Petitioner Shot Her**

In grounds one and two, petitioner asserts that the trial court's admission of Officer Gerjets's testimony regarding Corbett's statement was an improper expansion of the dying declaration exception to the hearsay rule and violated the Confrontation Clause. [Doc. 1 at 5]. Specifically, petitioner maintains that Corbett's statement did not qualify as a hearsay exception because it was not made when she was "in the article

8

of death." [Doc. 10 at 1-2]. Petitioner also claims that the admission of Corbett's statement under a dying declaration exception to the Confrontation Clause's bar against testimonial hearsay was improper because the United States Supreme Court has not addressed the issue. [<u>Id.</u> at 3; Doc. 1 at 5].

If hearsay evidence is testimonial in nature, the Confrontation Clause bars its admission unless the witness "was unavailable to testify [at trial], and the defendant had had a prior opportunity for cross-examination." <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54 (2004). When the evidence is "nontestimonial" hearsay, the states are free to develop their own hearsay law. <u>Id.</u> at 68. In <u>Crawford</u>, the Supreme Court declined to define "testimonial," but held that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." <u>Id.</u> However, the Supreme Court noted that dying declarations historically had been recognized as an exception to the general rule of criminal hearsay law. <u>Id.</u> at 56 n.6. "Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are." <u>Id.</u> Nevertheless, the Supreme Court did not decide "whether the Sixth Amendment incorporates an exception for testimonial dying declarations." <u>Id.</u>

AO 72A
(Rev.8/82)

In <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006), the Supreme Court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

<u>Id.</u> The Supreme Court clarified that hearsay statements made to police are testimonial when the interrogation is "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." <u>Id.</u> at 826. On the other hand, "when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony," such as "to respond to an 'ongoing emergency,'" the statement is nontestimonial. <u>Michigan v. Bryant</u>, 131 S. Ct. 1143, 1155 (2011). In determining the primary purpose of an interrogation, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." <u>Id.</u> The Supreme Court has not yet decided whether "dying declarations, even if testimonial, [are] admissible as a historical exception to the Confrontation Clause." <u>Id.</u> at 1151, n.1.

10

The Georgia Supreme Court made the following findings on direct appeal:

Prior to the start of trial, the trial court held a hearing on [petitioner's] motion to exclude statements made by Corbett to Officer Gerjets that [petitioner] had shot her. The statements were made as Corbett was waiting for help from emergency responders, and the trial court ruled that the statements were admissible into evidence as dying declarations and as part of the res gestae. [Petitioner] contends that such ruling was error because the statements inculpating him did not qualify as dying declarations in that Corbett was not in the "article of death" when she made the statements, and, in fact, did not die until several hours later; he further argues that Corbett's statements were not admissible under the rationale of res gestae because they were made in response to police questioning, and that even if the statements qualify as either dying declarations or part of the res gestae, the analysis in <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), should be applied to find them inadmissible. However, the contentions are unavailing.

> One of the requirements for a statement to be admissible as a dying declaration is that the deceased must have been conscious of his condition. . . . OCGA § 24–3–6. It need only appear to the court from the circumstances of the case that there was a probability that the deceased was conscious of his condition at the time he made the statement. . . . The testimony introduced as dying declarations need not contain any statement by the deceased to the effect that he was conscious of impending death at the time the declarations were made, since this may be inferred from the nature of the wounds and other circumstances.

<u>Morgan v. State</u>, 275 Ga. 222, 224(5), 564 S.E.2d 192 (2002) (citations and punctuation omitted). Here, the circumstances amply demonstrate that Corbett was conscious of her critical condition at the time she made the statements inculpating [petitioner] as the shooter: it was apparent that

her wounds were extremely serious; she was clutching a pillow to her abdomen to comfort her; her breathing was "stressed"; she was in great pain; and she appeared to be overwhelmed with fear. Moreover, recognizing the dire nature of her injuries, Corbett called 911 immediately after being shot and asked if she was going to die, and as the tape of the 911 call further established, Smith pleaded with her to "stay alive." These circumstances made a prima facie showing for the admission of the subject statements as Corbett's dying declarations. Ventura v. State, 284 Ga. 215, 217(2), 663 S.E.2d 149 (2008). What is more, the statements were properly admitted under the res gestae exception to the hearsay rule, even though they may have been in response to queries by the officer; Corbett made the statements shortly after the shooting, in the midst of the chaos of the crime scene, and while awaiting emergency treatment. Morgan v. State, supra at 225(5), 564 S.E.2d 192 (2002). See OCGA § 24–3–3.

As to [petitioner's] urging that this Court should apply the analysis in Crawford v. Washington, supra, to find the statements inadmissible, this Court previously has acknowledged with approval that the Supreme Court of the United States has expressly declined to extend its analysis to dying declarations. Walton v. State, 278 Ga. 432, 434(1), 603 S.E.2d 263 (2004).

Sanford, 695 S.E.2d at 583 (footnotes omitted).

The undersigned finds that the Georgia Supreme Court's application of federal law was reasonable. The Georgia Supreme Court reasonably considered the circumstances at the time Corbett's statement was made in rejecting petitioner's argument that Corbett was not actually "in the article of death." In addressing a similar

12

inquiry regarding whether statements were obtained during an ongoing emergency, the

United States Supreme Court explained:

> The existence of an ongoing emergency must be **objectively assessed from the perspective of the parties to the interrogation at the time, not with the benefit of hindsight**. If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause. The emergency is relevant to the "primary purpose of the interrogation" because of the effect it has on the parties' purpose, not because of its actual existence.

Michigan, 131 S. Ct. at 1157 n.8 (emphasis added). Thus, the Georgia Supreme Court

reasonably concluded, based on evidence regarding Corbett's perspective at the time

of the interrogation, that Corbett "was conscious of her critical condition at the time

she made the statements." Sanford, 695 S.E.2d at 583. That the United Supreme

Court has not expressly held that testimonial dying declarations are an exception to the

Confrontation Clause does not make the Georgia Supreme Court's decision

unreasonable. See Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003)

("[W]here no Supreme Court precedent is on point, we cannot say that the state court's

conclusion . . . is contrary to clearly established Federal law as determined by the U.S.

Supreme Court." (citation omitted)). In any event, the United States Supreme Court

has indicated that such an exception for dying declarations may exist. See Crawford,

13

541 U.S. at 56 n.6. The undersigned therefore finds that the Georgia Supreme Court's rejection of grounds one and two is entitled to deference pursuant to § 2254(d). <u>See Harrington</u>, 131 S. Ct. at 785; <u>Williams</u>, 529 U.S. at 404-05, 412-13.

## C.    <u>Ground Three: Trial Court's Res Gestae Ruling</u>

In ground three, petitioner asserts that the admission of Corbett's statement to Officer Gergets under the res gestae exception to the hearsay rule was improper under Georgia law. [Doc. 1 at 5]. Respondent maintains that this ground is not cognizable in federal habeas corpus because it does not allege a violation of federal law. [Doc. 6-1 at 9-10]. Petitioner responds that the improper admission of this evidence violates his federal constitutional right to due process. [Doc. 10 at 3].

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Evidentiary rulings in state court are based on state – rather than federal – law, and this Court reviews state court evidentiary rulings in a habeas corpus proceeding to determine only "'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.'" <u>Futch v. Dugger</u>, 874 F.2d 1483, 1487 (11th Cir. 1989) (citation omitted).

14

In order for an erroneous evidentiary ruling to establish a right to habeas corpus relief, the evidence in question must constitute a "'crucial, critical, highly significant factor' in [petitioner's] conviction." Williams v. Kemp, 846 F.2d 1276, 1281 (11th Cir. 1988) (citation omitted); see also Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").

As discussed above, the state court properly admitted Officer Gerjets's testimony regarding Corbett's statement under the dying declaration exception to the hearsay rule. Even assuming that the state court erred in finding that Officer Gerjets's testimony was also admissible under the res gestae exception to the hearsay rule, this alternative finding did not render petitioner's trial fundamentally unfair because the evidence was otherwise admissible. Thus, ground three fails to state a cognizable federal habeas claim.

**D.    Ground Four is Procedurally Defaulted**

In general, a state prisoner who seeks federal habeas corpus relief may not obtain that relief unless he first exhausts his available remedies in state court or shows that a state remedial process is unavailable or ineffective. 28 U.S.C. § 2254(b)(1). "Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas

15

corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court . . . ." Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994). A claim not previously raised in state court is procedurally defaulted when it is clear that a state court would now find that it is "barred by [state] law" from considering the merits of the claim. Castille v. Peoples, 489 U.S. 346, 351 (1989). Georgia law provides that if a petitioner failed to make a "timely motion or objection or otherwise compl[y] with Georgia procedural rules at trial and on appeal[,] . . . habeas corpus relief shall not be granted." O.C.G.A. § 9-14-48(d)(d).

Petitioner did not raise ground four–the indictment was invalid, evidence of contributing factors in Corbett's death were not disclosed in discovery, and petitioner was not indicted on lesser included offenses–on direct appeal. Because O.C.G.A. § 9-14-48(d) bars petitioner from raising this ground in a state habeas petition, it is procedurally defaulted. See Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that "if state-court remedies are no longer available because the prisoner failed to comply with . . . [state-court rules], those remedies are technically exhausted, [] but . . . the prisoner generally is barred from asserting those claims in a federal habeas proceeding"). A petitioner can overcome a procedural default by showing "cause" for

16

the default and resulting "prejudice" or that "a fundamental miscarriage of justice" will

occur if the claim is not addressed. Mincey v. Head, 206 F.3d 1106, 1135 (11th Cir.

2000). Because petitioner has not alleged cause and prejudice or a fundamental

miscarriage of justice to excuse the procedural default of ground four, he is not entitled

to federal habeas relief on this ground.

### III. CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant

cannot take an appeal unless a circuit justice or a circuit or district judge issues a

certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules

Governing Section 2254 Cases in the United States District Courts provides that "[t]he

district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate

of appealability ("COA") shall not issue unless "the applicant has made a substantial

showing of the denial of a constitutional right." A substantial showing of the denial

of a constitutional right "includes showing that reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to

proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotation

AO 72A
(Rev.8/82)

marks omitted).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118 n.3 (2009) (internal quotations marks omitted) (citing <u>Slack,</u> 529 U.S. at 484). Based on the foregoing discussion of petitioner's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that petitioner be denied a COA.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that this 28 U.S.C. § 2254 petition, [Doc. 1], and a COA be **DENIED**, and that this action be **DISMISSED**.

Commissioner Brian Owens' motion to intervene as a party respondent, [Doc. 7], and motion to file responsive pleadings out of time, [Doc. 8], are **GRANTED** <u>nunc pro tunc</u>.

18

The Clerk is **DIRECTED** to substitute Commissioner Brian Owens as the proper party respondent in this action and to terminate the referral to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 23rd day of April, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

19